## CLARK V. POLK COUNTY.

1. **Pleadings:** ACTION UPON COUNTY WARRANTS. The answer to the petition in an action on county warrants averred " that the said several warrants set out therein, and each of them, were issued without a *recorded* vote of the board of supervisors." *Held,* 1st. That the answer was insufficient, inasmuch as it did not allege that the warrants in suit were *not* issued for jury fees. (Rev. 1860, § 321.) 2. That if a vote was actually had by the board of supervisors, but by an omission of the clerk was not *recorded,* the omission would not invalidate the warrants.

2. **County:** WARRANTS NOT NEGOTIABLE. County warrants are not negoti-able under the law merchant. While they are assignable under the statute, and the assignee may maintain an action thereon in his own name, they are subject to any defense which might be made against the payee.

    *Argu.* 1. —— POWER OF CLERK. The clerk of the board of supervisors is not the general agent of the county, but his powers and duties are expressly conferred and prescribed by statute; and he cannot bind the county further than the warrant of his express authority.

    2. —— NEGOTIABLE PAPER: AGENT. A special agent has no authority to bind his principal by a promissory note, bill of exchange or other nego-tiable instrument.

    —— It follows that the clerk of the board of supervisors has no power to make or issue negotiable county warrants, and such want of authority is conclusively presumed to be known of all men.

    3. —— CASES EXAMINED. The authorities touching this question cited and considered.

    4. CONSTRUCTION : PUBLIC POLICY. While public policy should not override *principle,* nor overturn or run counter to an unbroken current of author-ities, it may be considered in determining a question whereon the author-ities are in conflict, or the principle upon which it rests is more or less uncertain.

3. **Evidence:** EXECUTION OF WRITTEN INSTRUMENT. The provisions of § 2967, Revision of 1860, as amended by ch. 28, Laws of 1862, that when an

Clark v. Polk County.

action is founded upon a written instrument, a copy of which is filed with the pleading, the genuineness or due execution shall be deemed admitted unless denied by the adverse party under oath, and that any other writing, a copy of which is filed with the pleading, may be read against such party as genuine and duly executed, unless he denies the same by affidavit before the trial is begun, is applicable to cases in which trading or municipal corporations are parties.

4. —— OFFICIAL CERTIFICATE. It is a general rule that when a statute authorizes and requires an officer to make a statement or certificate in writing, such writing is competent evidence of the fact stated or certified.

5. Practice: ASSIGNMENT OF ERRORS. The Supreme Court will not review rulings of the court below which have not been made the basis of an assignment of errors.

*Appeal from Polk District Court.*

MONDAY, OCTOBER 9.

THIS suit is brought upon county warrants. The petition contains twenty-four counts, upon as many warrants. The plaintiff recovered judgment for the full amount of his claim, and the defendant appeals.

The record is quite voluminous, and it will conduce to perspicuity to state the facts bearing upon each point in connection with the discussion of the legal questions arising thereon. The further necessary statement of the case will, therefore, be found in the opinion.

*Polk & Hubbell* for the appellants.

*Phillips & Phillips* for the appellees.

COLE, J. — I. The defendant, for answer to certain counts, averred, "that the said several warrants set out therein, and each of them, were issued without a recorded vote of the board of supervisors of Polk county, Iowa, and are therefore without any authority from defendant; nor are they, or any of them, binding on

1. PLEADING: action upon county warrants.

VOL. XIX.—32

defendant." To this count in the answer the plaintiff demurred, because the same did not constitute a defense as against the plaintiff, who is an innocent holder, without notice, and not charged with fraud. The District Court sustained the demurrer, to which the defendant excepted, and now complains of the same as error.

It will be observed, that the only averment in this count is, that the warrants named were issued *without a recorded vote* of the board of supervisors; the remainder of the count is a mere deduction of the pleader from the premise stated, a mode or pleading not to be commended. The only inquiry then, as far as this count is concerned, is whether, under any state of fact, a county warrant may legally issue without such *recorded* vote.

Revision, section 321, provides that "the clerk shall not sign or issue any county order, except upon the recorded vote or resolution of the board of supervisors authorizing the same, except for jury fees, and every such order shall be numbered," &c. The statute itself, it will be seen, provides for the issuance of certain orders, to wit: for jury fees, without a recorded vote. There is no averment in this count, that the orders to which the same applies were not issued for jury fees. The averment in this count of the answer may be true, and yet constitute no defense to the recovery upon the orders referred to in it. The demurrer was, therefore, properly sustained.

But, if there was no exception contained in the statute, or if the exception had been negatived, we are not prepared to hold that a *recorded* vote is necessary to authorize the issuance of a county order, in every possible case. If the vote had actually passed, and the failure to *record* it was a mere *clerical omission*, we are clear that such omission could not invalidate an order otherwise legally and properly issued.

II. For a further answer to the same counts the defend-

Clark v. Polk County.

ant averred that said warrants and each of them were
2. County: issued by order of a committee styling itself a
warrants
not negoti- "Court House Committee," to certain persons
able.
named, under contract, copies of which are annexed; that
said committee had no authority to make such contract for
defendant, nor to order the issuance of said warrants
thereunder. To this division of the answer the plaintiff
demurred for the same reasons as above stated, which was
also sustained and exceptions duly taken.

There are several other divisions of the answer to the
same count, and others, setting up, in substance, the same
defense. One division avers that the so styled "Court
House Committee" agreed to and did, without authority,
issue the warrants at the rate of seventy-five cents on the
dollar, &c.

The demurrer to all these divisions rests upon the same
point, the pivotal point, in the case, and the one argued
by counsel and determined in the court below, to wit, are
county warrants, issued by the proper officer and made
payable to order or bearer, negotiable instruments at the
law merchant? If they are, it is conceded that these
defenses are not sufficient as against the plaintiff, a *bona
fide* indorser for value before maturity. If they are not
properly negotiable at the law merchant, but only assign-
able by force of our statute, then they are vulnerable to
the same defenses in the hands of the plaintiff, an assignee,
as they would be in the hands of the original payee, and
the demurrer was not well taken.

In the examination of the question of negotiability it
may be observed:

*First.* That the clerk of the board of supervisors is not
the *general* agent of the county, but his powers and duties
*Argu.* 1.— are specially conferred and prescribed by statute.
power of
clerk. He is possessed of just that authority and no
more than is given him by the statute. His agency or

authority is therefore limited, and being but a special agent, or clothed only with limited powers, he cannot bind the county further than he has express authority to bind it. And it is a general rule that, where an agent is invested with only limited powers, it is the duty of persons dealing with such agent to ascertain the extent of his authority, for if he exceed it, the principal is not bound. 1 Pars. on Contr., 40, and authorities cited; Chitty on Contr. (10 Am. from 6 Eng. ed.), 229, and authorities; Story on Agency, § 126, and authorities; *Beals* v. *Allen*, 18 Johns., 363. This rule is applicable and is rigidly enforced, even in cases where the authority of the agent is in parol, or if written, is in the possession of the principal or agent, and not made a matter of public record. It ought, therefore, *a fortiori*, to be enforced where the authority is derived from a public statute, which, in contemplation of law, is "known and read of all men."

*Secondly.* It is a well settled rule of law that a special agent has no authority to bind his principal by a promis-

*Argu. 2.* — sory note, bill of exchange, or other negotiable
*negotiable*
*paper.*     paper. Indeed, Mr. Parsons says, that "a general authority to transact business, even if it be expressed in words of very wide meaning, will not be held to include the power of making the principal a party to negotiable paper. * * * So carefully is this authority watched, that where power is given to do some things with regard to promissory notes or bills, it cannot be enlarged by construction to do other, though somewhat similar things." 1 Pars. on Bills and Notes, 106, 107.

In *Esdaile* v. *La Nauzie*, 1 Young & C. Exch., 394, where a power of attorney gave the agent full power as to the management of certain real property, with general words extending those powers to all the property of the principal of every description, and in conclusion, authorized the agent to do all lawful acts concerning all the

principal's business and affairs, of what nature or kind soever, it was *held*, that this did not authorize the agent to indorse bills of exchange in the name of the principal. See also *Gardner* v. *Baillie*, 6 Term R., 591; *Murray* v. *East India Company*, 5 B. & Ald., 204; *Wallace* v. *Branch Bank*, 1 Ala., 565; *Nichols* v. *State Bank*, 3 Yerg., 107; Story on Agency, §§ 69–83; *Smith* v. *Inhabitants of Cheshire*, 13 Gray, 318. It would follow, therefore, upon these general rules and recognized authorities, that the clerk of the board of supervisors, whether he is the special or general agent of the county, would have no authority to bind the county by a *negotiable* instrument, unless he is expressly authorized by statute so to do, or unless it is necessary for him to do so, in order to execute the power conferred or duty enjoined. There is no such statute, and it is not claimed, nor indeed can it be, that any such *necessity* exists. Upon principle, then, the clerk of the board of supervisors has no authority to make or issue a *negotiable* county warrant, and such want of authority is conclusively presumed to be known to all persons, since all are presumed to know the law.

*Thirdly.* It may not be unprofitable to examine the question in the light of adjudicated cases. This precise question is a new one in this State, and in its determination, it is certainly prudent for us to avail ourselves of the light afforded by analogous cases determined in other appellate judicial tribunals. Especially is this the case where the question, as in this instance, is one of very great importance to the parties, as well as to many other counties and individuals. In *Andover* v. *Grafton*, 7 New Hamp., 298, the suit was brought upon a note made payable to plaintiffs, without words of negotiability, and it was contended that the town could not be made liable upon a note given by the selectmen. The court holds that the town was liable on the contract evi-

*3. —— cases examined.*

denced by the note, and says, " nor is it any objection
that if the contract may take this shape, it may be made
negotiable, and the town thus be made liable to pay a
third person. * * * * An indorser who should take
such note, even before due, would receive it subject to a
liability to make the same proof respecting the authority
of the selectmen to execute it, in that particular case, as
would be required of the promisee; and of course must
be chargeable with notice of all the facts, and the note in
his hands be liable to the same defense, as in the hands of
the original promisee."

In *Smith* v. *Inhabitants of Cheshire*, 13 Gray, 318, the
suit was upon a " town warrant," issued to one Wescott or
bearer, the payee having been collector of the town and
indebted to it in a sum greater than the warrant. The
defendants resisted the action, on the ground that there was
no authority conferred on the selectmen and the treasurer
to make and accept such order. The court, per BIGELOW,
J., say: " The powers and duties of selectmen are not very
fully defined by statute. * * * Speaking generally, it
may be said that they are agents to take the general super-
intendence of the business of the town. * * * But
they are not general agents. They are not clothed with
the general powers of the corporate body for which they
act. They can only exercise such powers and perform
such duties as are necessarily and properly incident to
the special and limited authority conferred on them by
their office. * * * The rule of law is well settled, that
a special agent has no authority to bind his principal by
a promissory note, bill of exchange, or other negotiable
paper. Such power can only be conferred by the direct
authority of the party to be bound. To this rule there
is but the single exception, that such authority may be
implied where it is essential to the performance of the par-
ticular duty with which an agent is specially charged.

This well established restriction on the power and authority of agents is particularly applicable to public agents, especially to those acting in behalf of towns. It would lead to dangerous results, if selectmen might, at their pleasure, issue negotiable paper, on which the town might be held liable to any person to whom it might be passed. And the court *held* that the warrant was not negotiable, and the town was not liable to an action in the name of the assignee.

In *The People ex rel., &c., v. Board of Supervisors of El Dorado County,* 11 Cal., 170, the court say: "County warrants acquire no greater validity in the hands of third parties than they originally possessed in the hands of the first holder, no matter for what consideration they may have been transferred, or in what faith they may have been taken. If illegal when issued, they are illegal for all time. The protection which attends the purchaser of negotiable paper before maturity, without notice of the illegality of its consideration, does not extend to like purchasers of county warrants. Were this otherwise, it is easy to see that the county would be entirely at the mercy of the board."

"In *Bayerque et al. v. The City of San Francisco,* 1 McAllister (U. S. C. C. Rep.), 175, which was an action brought upon city warrants negotiable in form, the court, on demurrer, "because they do not constitute any evidence of indebtedness," say: "The plaintiff does not sue upon them as agreements, setting forth the consideration, but as negotiable, as bills of exchange, which imply a consideration. We do not regard them as such. The defendant is not a private trading corporation, but a public, municipal one. * * * The instruments sued on are merely what they purport to be when legally issued. *Warrants* or authority to the officer to pay out public money in his custody. They are drawn by one officer of

a corporation upon another, and intended rather as a conditional payment of a preëxisting debt already audited, than as instruments creating a new debt, or expressing a new promise. They are designed to give facility, regularity and security in the disbursement of the public money. * * * But in no sense do they constitute a promise on the part of the city to pay, as the drawer of a bill of exchange." And the demurrer was sustained.

See also in support of the same general views, *Board of Supervisors* v. *Cox*, 6 Ind., 403; *Thayer* v. *The City of Boston*, 19 Pick., 511; *Hyde* v. *County of Franklin*, 1 Williams (27 Vt.), 185; *Averill* v. *Booker*, 15 Gratt., 163. The only cases in conflict with this doctrine, which we have been able to find, are *Dalrymple* v. *Wittingham*, 26 Vt., 345 (which seems to be overruled by 27 Vt., 185, *supra*), and *Lyell* v. *Supervisors of Lapeer County*, 6 McLean, 446, which is only partially at variance with it. *Clapp* v. *Cedar County*, 5 Iowa, 15, is not an analogous case, and is, therefore, not in conflict with the authorities quoted; nor is *Clark et al.* v. *City of Janesville*, 4 Am. Law Reg., 591, which is in conflict with *Clapp* v. *Cedar County*, an authority in support of them. See also, for full discussion of this question, the opinion of DILLON, J., in *Clark* v. *City of Des Moines*, *ante*.

*Fourthly.* While *public policy* should not be made to override *principle*, nor yet to overturn or run counter to an unbroken current of *authorities*, it may nevertheless be properly considered by judicial tribunals in determining a question whereon the authorities are in conflict, or the principle on which it rests is more or less uncertain. Or, as in this case, it may be considered in fortifying the authorities, and the more unerringly to fix the principle on which the case rests.

*Argu. 4.* CONSTRUC-TION: public policy.

The clerk of the board of supervisors is the proper person to execute and issue county orders or warrants. As

such he is intrusted with the seal, and is the custodian of the blank warrants usually prepared for the counties. There are certain cases in which, by the law, he may issue warrants (for jury fees, &c.), without any vote or order by the board of supervisors. Suppose, in such case, he should issue a warrant for a very large sum, thousands of dollars if you please, when only a few dollars or cents were justly due the payee; such warrant, in the hands of the payee, could be successfully defended by the county to the extent of the excess, on the ground of failure or want of consideration. But if it is a negotiable instrument, and has passed to the hands of an innocent indorser for value, the county could not avail itself of such defense, and would be compelled to pay the full amount. And when it is remembered that the clerk might easily sign, seal and issue any number of such warrants, so as to completely bankrupt any county in one hour's time, and they can readily be sold in market to innocent holders before the fact could be known to the public, the great importance of adhering to the strict limitation of his authority, is abundantly apparent. Unless his authority is rigidly construed so as to render him incapable of issuing negotiable warrants, the county could have no protection against the weakness or corruption of the clerk. How strong, then, are the claims of public policy for a strict adherence to the principle and authorities before stated and cited.

On the contrary, if such warrants are held non-negotiable, it is completely in the power of all persons to protect themselves from loss, since the law and the public records necessarily afford to every person the means of ascertaining the facts as to the legality and validity of every warrant issued, so that, by such non-negotiability, both the counties and individuals are abundantly and fully protected. There is no validity or force in the assumption that by such ruling the credit of the counties would

be impaired, and their necessary municipal operations be impeded. No honest person would refuse to labor or furnish material to a county, because he could only receive a fair and just compensation, nor because, by judicial construction, it was furnished with a coat of mail, guarding it against the assaults and machinations of the dishonest. A warrant properly issued, if not as readily sold, would yield more value to the seller when sold.

In view of this concurrence of principle, authority and public policy, we have no hesitation in holding that county warrants are not negotiable at the law merchant. They are, of course, assignable under our statute, and suit may be brought thereon in the name of the assignee, but subject to any defense which might be made as against the payee.

It follows, therefore, that the court erred in sustaining the plaintiff's demurrer to defendant's answer, in so far as the same set up matters of defense available as against the payee, it being the second and third divisions of each, the first, sixth and seventh counts as described in the demurrer.

III. As to several of the counts in the plaintiff's petition, upon as many warrants, the defendant, by answer, denied their execution, and averred that defendant did not, in any way, authorize or sanction the same, and was not indebted to plaintiff in any sum therefor. The cause was tried to the court, and the plaintiff offered, without further proof, the warrant set out in said counts in evidence, with the indorsement thereon of "presented for payment and not paid for want of money," and the signature of the president thereto. The defendant objected to their introduction, because the warrants were not shown to have been drawn by order of the board of supervisors, there were no revenue stamps affixed, the indorsements were not proved or shown to have been

made by the proper officer. The court overruled the objections and admitted the evidence, and defendant excepted.

It is provided by section 2967 of the Revision, as amended by ch. 28 of Laws of 1862, that when an action is founded on a written instrument, a copy of which is filed with the pleading, the "genuineness and *due execution* shall be deemed admitted," unless denied by the adverse party, under oath; and that any other writing, a copy of which is filed with the pleading, "may be read against such party as genuine and *duly executed*, unless he denies the same by affidavit, before the trial is begun." This action is founded on written instruments, and if defendant desires to contro- vert their "due execution," it was necessary to do so by answer, under oath, or by affidavit. In other words, the statute is general, and the court would not be justified in making exceptions in favor of either trading or municipal corporations.

So far as the indorsements and signature of the treasurer are concerned, they are expressly authorized and required by statute. (Rev., § 361.) And it may be stated as a general rule, that where a statute authorizes and requires an officer to make a statement or certificate in writing, such writing is competent evidence of the fact stated or certified. As to the signature of the treasurer, it was competent under the provisions of Revision, § 2967, *supra*. No revenue stamp is required.

4. —— official certificate.

IV. The defendant made a motion to set aside the find- ings by the court upon the counts referred to in the last point discussed, for the same reasons, in substance, as urged against the admission of the evidence. This motion was overruled, and such ruling is here assigned as error. There was no error in admitting the evidence, and hence, none in overruling the motion to set aside the findings.

The defendant made the same objections, in substance,

to the introduction in evidence of the other warrants sued on and also the same motion to set aside the findings of the court with like correct result.

V. The defendant offered to show to the court, on the trial, by the records of the board of supervisors, that the several warrants were issued without a recorded vote of the board of supervisors, and without any authority from defendant. The plaintiff objected to this proof, because, 1st. It was immaterial. 2d. The warrants were negotiable, and no evidence offered that plaintiff took them after due or with notice of defect; and, 3d. The statute requiring the clerk to issue no warrants except upon recorded vote was directory. These objections were sustained and the evidence excluded, to which defendant excepted. But upon this point, as well as upon one or more others made by the record, there is no specific assignment of error in this court (Rev., § 3546), and hence we are not properly called upon to decide them. These questions, however, are fully disposed of adversely to plaintiff in what has already been said.

*5. PRAC-TICE: assignment of error.*

For the reasons stated under the second point discussed in this opinion, the judgment of the District Court is

　　　　　　　　　　　　　　　　　　　　Reversed.