## DAVENPORT *v.* THE TOWN OF JOHNSON.

*Selectmen.    Town Auditors.    Gen. Sts. c. 15. s. 52.*

Defendant's selectmen, acting, as they supposed, in discharge of their official duty, paid a large sum of money in endeavoring to ascertain the liability of the town upon its subscription in aid of a railroad ; and presented the items of their expenditure to the town auditors, and the auditors found that the expenditures were made. The selectmen thereupon issued to themselves, or bearer, for their reimbursement, orders upon the town treasurer, and at the next March meeting, said orders were reported by the auditors among defendant's liabilities; but as to them the report was rejected by vote of the town. At maturity said orders were presented for pay-

ment; which was refused. *Held*, that as it was no part of the auditors' duty to audit and allow such claims, they did not by their action bind the town to the payment of the orders, and that the selectmen, who were themselves the claimants, and therefore in no position to represent the adverse interests of the town, had no authority to draw them.

ASSUMPSIT. Plea, the general issue. There were three suits consolidated and tried as one, by the court, at the April Term, 1876, Ross, J., presiding.

It appeared that in 1868, under the act of 1867, passed to enable towns to aid in the construction of the Lamoille Valley Railroad, the defendant town subscribed for four hundred and eighty shares of stock in said railroad, to be paid for in bonds of said town. The par value of the shares was one hundred dollars. By the condition of said subscription, fifteen per cent. of the amount subscribed was to be payable when the road should be completed and put in operation to within three miles of the business center of said town, and the remainder when it should be completed and put in operation to the center, or as near thereto as practicable. In January, 1873, the road was completed and opened to Hyde Park, five miles from the defendant town. In the following season, the company, in working the road on from Hyde Park, located the line a little way out of the village, or business center of the defendant town, whereas the preliminary survey passed very nearly through it. The defendant's selectmen, acting under advice, and deeming it to be their duty, then employed an engineer to make surveys, plans, and estimates, for which they paid $496.90, and took counsel of an eminent lawyer, to whom they paid $500 for an opinion, in order to ascertain whether the town would be liable to the company on its subscription if the road should be built where the company had located and were then constructing it. To meet those expenses, as there was then no money in the defendant's treasury for such purpose, the selectmen borrowed $996.90 on their personal notes. In February, 1874, when the selectmen met with the defendant's auditors, they presented those items of expenditure, and the auditors found that the sums had been paid and money raised as aforesaid. The selectmen then cast interest upon their notes, and found $1071.95

due thereon. They thereupon drew three orders upon the defendant's treasurer, each for one third of that sum, and payable to themselves severally, or bearer, by the 1st of September then next. Each order bore upon its face a statement of what it was given for. The auditors reported those orders to the town at its next March meeting, as among the liabilities for which the selectmen had given orders, and one of the selectmen explained what they were given for. The town voted to accept the report of the selectmen and auditors, except as to those three orders, and to reject it as to them. Upon maturity the orders were presented to the defendant's treasurer, and payment and acceptance thereof demanded. The treasurer was also requested to make a minute thereon that payment had been demanded ; but he refused to pay, or accept, or have anything to do with them in any way. Subsequently one of the selectmen put the orders into the hands of the plaintiff for collection ; and he, without making any advances upon them, brought suit thereon for the benefit of the payees thereof.

On these facts, the court held that the orders were given under such circumstances that the plaintiff could not maintain an action upon them in his own name, and rendered judgment for defendant ; to which the plaintiff excepted.

*George W. Davenport,* pro se, (*Brigham & Waterman* with him).

*Davenport & Eddy* and *M. O. Heath,* for defendant.

The opinion of the Court was delivered by

POWERS, J. Sec. 71, c. 15, Gen. Sts., makes it the duty of the town treasurer to pay orders drawn upon him by the selectmen, and provides that in case he neglects or refuses to pay such orders on demand, the holder may maintain an action thereon against the town. The office of this statute, so far as concerns the order, is simply to regulate the right of action upon it. It makes a demand of payment a condition precedent to any right of recovery against the town. The holder, on trial, must make proof of such

demand as an essential element in his right to sue.   If the treas-
urer indorses upon such order when presented, any memorandum
officially attesting or acknowledging such demand, no further
proof would be requisite ; but he is not under any duty to do this;
and if he omits it, the fact of a demand must be established by
proof *aliunde*.   But a demand once made will enure to the ben-
efit of any subsequent holder of the order.   The quality of nego-
tiability which such orders possess, does not depend upon evidence
that a demand for payment has been made, but arises from the
form of the instrument.   If in form negotiable, they pass by de-
livery or indorsement, and the indorsee may sue thereon in his
own name.

The action of the auditors before and at the annual March
meeting in 1874, did not legalize these orders as binding obliga-
tions upon the town.   It was no part of the duties of the audi-
tors to audit and allow such claims.   Their duties are limited to
the examination and adjustment of the accounts of the several
town officers as such.   Their jurisdiction, and that of the select-
men, over the allowance of claims against the town, is not con-
current.   The duties of the several town officers are prescribed
and limited by statute ; and within the scope of their official duty,
their action is final.   The auditors are appointed to revise and
verify the accounts of these officers of their doings for the protec-
tion of the town, and report the result of their examination to
the town, and the town takes final action in the premises.

The right of the selectmen to allow the claim for which they
drew the orders in suit, is claimed to exist in virtue of s. 52, c.
15, Gen. Sts., which reads : " The selectmen shall also audit, and,
in their discretion, allow the claim of any person against the town
for money paid or services performed for the town, and may draw ·
orders on the treasurer for the sum so allowed."   In the examin-
ation of claims against the town under this section, the selectmen
act for and in behalf of the town.   They represent the town in
the inquiry into the merits of the claim, and in the exercise of a
*discretion* thereon, they sustain in interest a relation *adverse* to
that of the claimant, and are bound to act for the best interests
of the town.

If the selectmen should acquire a pecuniary interest in any claim allowed, whereby they reaped a profit to themselves, the town would be entitled to the benefit of such profit, upon the familiar doctrine that applies to agents, trustees, administrators, and all other persons who stand in fiduciary relations to others, that such persons shall make no profit to themselves as against those for whom they act.  This doctrine was recognized and applied in *Judevine* v. *Town of Hardwick*, General Term, 1876 *

It is evident that this doctrine applies with special force to a case where the claimants are the selectmen themselves.  What room in such case is there for the exercise of a fair *discretion* in passing upon the question of the allowance of their own claims?  Each one of the selectmen had a pecuniary interest in this claim, which amounted to a thousand dollars and more.  They had long before the date of the orders adjudged it advisable to incur the debt covered by the orders, and had paid, or become liable to pay, it themselves.  Now when the question was presented to them whether this was a claim properly allowable against the town, and they assumed to sit in judgment upon that question, how could they impartially act for the town and represent its adverse interests in that inquiry?  The statute was not designed to apply to such cases, and the allowance of the claim by the selectmen availed nothing, and the orders were drawn without authority of law.

The plaintiff being a nominal holder, the defence can be made the same as though suit had been brought in the name of the original payees.

Judgment affirmed.

* *Ante,* 180.