THE SIOUX CITY AND PACIFIC RAILROAD, PLAINTIFF IN ERROR, v. WASHINGTON COUNTY AND THE BOARD OF COUNTY COMMISSIONERS THEREOF, DEFENDANTS IN ERROR.

SAME v. SAME.

Practice: APPEAL. An appeal, from a decision made by county commissioners sitting as a board for the equalization of taxes, does not lie to the district court.

————: ————. The two boards being separate tribunals, the right of appeal from the decisions of one board, which is allowed by statute, does not necessarily imply the right of appeal from the decisions of the other.

————: FINAL ORDER: PETITION IN ERROR. The decision of the county board of equalization, in fixing the assessed valuation of property and in making the levy for taxes, is a *final order*, and as such may be reviewed in the district court upon petition in error.

Equalization of taxes: POWERS OF COUNTY BOARD. The county board of equalization can only exercise such powers as are expressly granted by statute, and when the law prescribes the mode they must pursue in the exercise of these powers, it excludes all other modes of procedure.

————: ————. The county board has no right to meet, and re-assess property for taxation, at any other time than that fixed by law; but, while the time fixed is intended to operate as a notice to all persons who may feel aggrieved, yet the county board cannot, at any time, *increase* the assessed valuation without notice to the person whose rights and interests are affected thereby. [a]

THESE were two cases commenced in the district court of Washington county, the first being an appeal from the decision of the board of county commissioners in overruling the petition and motion of the Sioux City and Pacific Railroad, to set aside the action of the board in raising the assessment of said railroad from six to twelve thousand dollars per mile, and the other being a petition

[a] Since the rendition of this decision, the statute has been amended giving the county board of equalization "the right to raise or lower the valuations of any or all property as may be deemed just and proper," etc. *General Statutes* 1873, *sec.* 27, *page* 907. *See also page* 939, *sec.* (123.)

in error alleging manifest errors in the proceedings of said board concerning the same assessment.

Both cases were heard at the November Term, 1872, of the district court. The appeal case was dismissed for want of jurisdiction, and the petition in error being over-ruled, judgment was rendered sustaining and affirming the proceedings of the board of equalization.

To review these judgments two petitions in error were filed in this court.

The material facts involved are fully stated in the opinion of the court.

*Isaac Cook* and *N. M. Hubbard*, for plaintiff in error, presented a lengthy argument, from which the following points are taken:

These two cases involve substantially the same questions, and may be argued together.

I. Had the district court jurisdiction to hear the appeal *de novo?*

*First.* This depends upon the jurisdiction of the board of county commissioners to entertain plaintiff's petition to set aside its own order, previously made, raising the assessment. And this raises the question whether the order of the board of the 16th day of May, 1872, is either a *decision* upon matters "properly cognizable before them," as provided by section 32, page 42 of the *Revised Statutes of* 1866, or "final order made" as provided by the code, Sec. 580.

1. If it is not such a "decision" or "final order made," *in a judicial sense*, while it might be the subject of appeal or error, it would nevertheless be within the power of the board to set it aside upon application.

2. The words " decision " and " final order," as used in the statute, have the same import as the word "judgment." 1 *Bouvier's Law Dictionary*, 382, 525.

3. A judgment implies, *ex vi termini*, a court, jurisdiction of the subject matter, of parties, plaintiff and defendant, and either a dispute between the parties, or default, or *nil dicit*, by one of them. *Bouvier's Law Dictionary*, 676.

4. The order of May 16, 1872, has neither the character of a void or a voidable judgment, nor a "decision" or "final order," but is merely an order of the board on its own motion, and ought to be set aside upon application of any person interested, if either unjust or illegal. It is not even an *ex parte* order, because no person applied for it.

5. It is not different in principle from ordering the repair of a court house, and appropriating funds for that purpose and afterwards rescinding its own action. Such matters are always within the control of the board. It is only such matters as have been *contested* before the board, by parties interested, and where the board has decided the controversy, which are regarded as such *judicial acts* that they are beyond the revising power of the board, and from which an appeal or error must be taken to review them.

*Second.* If this view is correct the appeal ought to have been heard *de novo* by the district court, and not dismissed.

*Third.* But this question is not very material, except as a question of practice, because if the action of the board, in making the order of May 16, is of a judicial character, and subject only to appeal or error, we have the case properly before this court on error, and are in a position to obtain a decision upon the questions in both cases.

II. Had the board of county commissioners authority in law to raise the assessment from six to twelve thousand dollars per mile? This question is involved in both cases.

We rely upon the following general principles which we believe applicable to the construction of revenue statutes, and to the powers of civil corporations.

1. Revenue statutes are to be construed most favorably to the citizen, *Sewall v. Jones*, 9 *Pick.*, 414.

2. When an act requires a thing to be done in a particular way, that way alone can be pursued. *Tallman v. The Treasurer of Butler County*, 12 *Iowa*, 531. *Wilbur v. Crane*, 13 *Pick.*, 284.

3. The express mention of one thing implies the exclusion of all others. *Coke's Littleton*, 210, *Broom's Maxims*, 505.

4. All statutes are to be construed according to the apparent intent of the legislature, to be gathered from the entire language used in connection with the subject-matter and purpose of the law. *Rawson v. The State*, 19 *Conn.*, 292.

5. Municipal corporations have, and can only exercise, such powers as are expressly granted, and such incidental ones as are necessary to make these powers available, and are essential to effectuate the purposes of the corporation; and these powers are strictly construed. 2 *Kent Com.*, 298. *Clark v. City of Des Moines*, 19 *Iowa*, 212. *Mayor of Albany v. Cunliff*, 2 *New York*, 165. *Hodges v. Buffalo*, 2 *Denio*, 110. *Dill v. Wareham*, 7 *Met.*, 438. *Western College v. Cleveland*, 12 *Ohio State*, 375. *Commissioners v. Cox*, 6 *Ind.*, 403.

6. The difference between a citizen and civil corporation is radical and fundamental. The one may do anything not prohibited by law, while the other can do nothing except what the statute expressly permits. And this idea obtains special force when the sovereign power of a state, by a special statutory process, takes private property for public use or for taxes without due process of law.

3

*M. Ballard*, for defendant in error.

I. As to the appeal.

*First.* The revenue act is complete in itself and provides for no appeal. *Section* 32, *Chapter* IX, *R. S.* 1866 does not apply, and no appeal exists except by authority of statute.

*Second.* What the plaintiff in error chooses to call a decision which is here appealed from, was that made by the commissioners on July 1, refusing to reverse their action of nearly fifty days before. An appeal contemplates a trial. A trial contemplates a jury, if one be demanded, unless the matter be of equitable cognizance; and it will not be supposed that commissioners exercise equitable jurisdiction. What should be the issue submitted to the jury? Whether the commissioners acted rightfully or wrongfully in refusing to reverse their previous action?

If any error was committed it was that of law, and must be reached, if at all, by proceedings in error, and not by appeal.

*Third.* The appellant could not effect by indirection that which could not be reached directly. The act of the commissioners really complained of, and sought to be reached, is that of May 16. No appeal was taken from that within twenty days. *Sec.* 33, *Chap.* IX, *Revised Statutes*, 1866. Courts will not tolerate such circumvention. *Nuckolls v. Irwin*, 2 *Neb.*, 60.

*Fourth.* The statute provides for no reversal, or modifications of decisions or orders made by the commissioners, by petition or otherwise. Their action upon such petition in dismissing it, or refusing to comply with its prayer, was not a decision upon a matter "properly cognizable before them." Hence no appeal.

*Fifth.* At the time plaintiff in error appeared before

the board July 1, the assessment of the road 'with the valuation of all property had, if the law was obeyed, passed to the state board of equalization, and had become the subject of state levy, and therefore beyond the control of the commissioners. *Laws of* 1869, *Sec.* 29, *page* 191. And the presumption is that officers have done their duty. *Parish v. Golden*, 35 *New York*, 466.

*Sixth.* If the commissioners had no authority in law to change the assessment, then it is clear that their error was one of law, and not to be reached by appeal. If within their authority it is exclusively so. To equalize is not *ex vi termini*, to fix the exact value of the company's road, but it involves the value of other property, especially other roads, the relative value of the several items assessed. This is a matter not to be ascertained by jury or court, nor was it the intention of the legislature to substitute the judgment of the latter in place of the former.

II. As to the proceedings in error.

*First.* We think the plaintiff in error unfortunate in the selection of its remedy. A judgment or final order may be reversed on error. *Sec.* 580 *of the Code.* Here is no judgment. Neither is there a final order in the sense of the code. The equalization complained of was but a proceeding *in fieri*—a step towards collecting the aggregate of taxable property of the county, upon which the state was to make its levy, and the county for itself as well as for the precincts.

*Second.* The statute has provided a way to obtain redress, to-wit: to appear before the board of equalization at the time fixed. When a remedy is provided by statute, that alone must be pursued: 4 *American Law Register, N. S.*, 442. It cannot be said that the commissioners were not acting as a board of equalization. They may sit more than three days, and adjourned to the 16th of May.

1.   It will be presumed that public officers have done their duty. *Parish v. Golden*, 35 *New York*, 466.

2.   Where the record leaves any question in doubt, the doubt will be resolved in support of the judgment. It is the duty of the party alleging error to make it distinctly appear.

3.   Neither can it be said that the company shall have any favor because it had no notice of the commissioner's action in time to be present. No notice is provided by statute nor remedy given to those who fail to appear at the time fixed by statute. *Hambleton v. Dempsey*, 20 *Ohio*, 168.

4.   The statement of the superintendent was not made out and transmitted in the prescribed time, and did not reach the county in time to be acted upon on the third Monday of April, as required by law. "No man can take advantage of his own wrong." *Broom's Maxims*, 209.

*Third.*   Considerations of public policy and inconvenience preclude the idea of proceeding under the provisions of the Code relating to error. The difference between the value as fixed by the superintendent and the commissioners is $117,600. This sum had passed to the state authorities, and formed a material item in fixing the rate of taxation, and when this case was heard in November, state, county, and precinct taxation had attached. It was beyond the power of the court, in a purely legal action, to render any judgment which could reach through all these matters, and correct the errors complained of. If it could do so, it might undertake it at any time within the three years given in which to institute proceedings in error, as provided by the code. And if so, what must be the judgment of the court?

*Fourth.*   It is sufficient for us to show that the plaintiff in error has mistaken the remedy, and not to indicate what it should have been. But it occurs to us, that if

the commissioners had a clear legal duty to perform under the statute, a mandamus would have been awarded to compel them to do it while the matter was under their control.

Blackstone says, 3 Com., 110: " It is the peculiar business of the court of King's Bench to superintend all inferior tribunals, and therein enforce the due exercise of those judicial or ministerial powers, with which the crown or legislature have invested them, and this not only by restraining their excesses, but also quickening their negligence, and obviating the denial of justice."

In *Barhyte v. Shepherd*, 35 *New York*, 238, Judge Hunt, in a case denying the liability of assessors for not exempting a minister under the New York statutes, says: " The remedy by mandamus, to correct the action of assessors in similar cases, is now of frequent occurrence, and relief could have been obtained by that proceeding." *The People, ex rel. Peabody v. The Attorney General*, 13 *How P. R.*, 179. *Bank of Utica v. City of Utica*, 4 *Paige*, 400. *The People v. Supervisors of New York*, 18 *Wend.*, 605. *The People v. The Assessors of Watertown*, 1 *Hill*, 616.

*Fifth.* Conceding that the plaintiff in error has chosen the proper proceeding, yet there is no error in the record.

1.  Such construction ought to be put upon a statute as may best answer the intention which the makers had in view. 9 *Bac. Abr.*, 246.

2.  When the intention is in doubt, the court will interpret the law to be what is consonant with equity. 9 *Bar. Abr.*, 246. *Kerlin v. Bull*, 1 *Dall*, [178]. *Crocker v. Crane*, 21 *Wend.*, 211. *Chamberlain v. Western Transportation Company*, 45 *Barb.*, 218.

3.  It was the duty of the legislature, not only to provide for the taxation of all property in the state, but to make such taxation equal.

GANTT, J.

One of these cases was brought into the district court on appeal, and the other by petition in error from a decision of the board of county commissioners of Washington county, and both involving the same subject matter, they will be considered together in this opinion.

In the appeal case it is complained that on the 16th day of May, 1872, the county commissioners, by their order of that date, increased the assessed valuation of plaintiff's railroad from $6,000 to $12,000 per mile; and the plaintiff, by petition, asked the board to reverse that order, and to levy the tax on said road at the valuation of $6,000 per mile, the amount assessed by the auditor of state. The board dismissed the complaint, and from that decision the plaintiff appealed to the district court.

It appears from the record that a motion was made to dismiss the appeal, but it does not appear that anything was done upon that motion, for the record shows that without any disposition of it, or any pleadings in the district court, a jury was waived, the case was tried to the court upon the proofs offered, and that the court found "as matter of conclusions of law: *First*. That the board had no authority to entertain or determine the petition of plaintiffs, etc.; *Second*. That the district court had no jurisdiction of the cause," and therefore rendered judgment of dismissal for want of jurisdiction. Will an appeal lie to the district court? Is it the proper remedy? Chapter IX, Revised Statutes of 1866, provides for a "Board of County Commissioners," and very clearly and fully defines their powers and duties, and fixes the times when their regular sessions shall be held. The powers conferred, and duties enjoined, are distinctly stated in this chapter; and in the exercise of these powers, the board acts judicially. Section ·32 provides "that from all decisions of the board of commis-

sioners, upon matters properly cognizable before them, there shall be allowed an appeal to the district court, by any person aggrieved." This right of appeal is only from the decisions of the " board of commisioners." The act of February 15, 1869, *Laws of* 1869, *page* 179, *General Statutes*, 896, provides for a " board of equalization for the county," and that the county commissioners of each county shall constitute such board. This " board of equalization " is a new one, created for a distinct object and purpose, different in name from that of a " board of county commissioners," and from the decisions of this new board there is no statutory provision for an appeal to the district court. Hence, there is no remedy by appeal from its decisions.

If the statute is defective in this respect, it is not the province of the court, by construction, to inject new provisions into it, for it is alone the province of the legislature to alter or amend statutory enactments.

It seems clear that the board of county commissioners and the board of equalization are two distinct offices—the former created by the act of 1866, and the latter by the act of 1869. By legislative enactment the functions of clerk of the district court and register of deeds are conferred on the county clerk, yet no one will pretend to interpret such legislation as merging the three distinct offices into one, neither does the act conferring on the county commissioners the functions of a board of equalization, merge the two offices into one. Hence, the two boards being separate tribunals, it is clear that the right of appeal from the decisions of one board being allowed by statute, does not necessarily imply the right of appeal from the decisions of the other board, but rather, that the express allowance of appeal in the one case, implies its exclusion in the other.

Again, the appeal allowed from the decisions of the board of commissioners, is allowed only upon " matters

properly cognizable before them." The relief sought by the plaintiff was the reversal of the order made by the board on the 16th day of May. The board of county commissioners as *such board* had no authority to act in the matter, and therefore there was no "matter properly cognizable before them." The board of equalization had no authority to act in the matter at the time, and under the circumstances, as will hereafter be shown, and therefore its proceedings in the matter, on the 16th day of May, are simply void. It may be further stated that no grant of power is given to this board to review and reverse, or modify its decisions, and hence from the want of such statutory authority, it seems clear that when the board have once acted and made its final order in such matters, its power is exhausted. It exercises powers expressly granted. Therefore, in any aspect of the case, and under well established rules of construction of such statutes, there was no matter properly before the board—there was no subject-matter before it, over which it had jurisdiction, and hence the court below properly dismissed the appeal, and its judgment must be

AFFIRMED.

The second case was brought into the district court upon petition in error. It appears from the record that the board met on the 18th day of April, and by adjournment again met on the 16th day of May, and at this last meeting, without notice to the plaintiff, "ordered that the assessment of the Sioux City and Pacific Railroad be raised to $12,000 per mile." The district court "sustained and affirmed this proceeding" of the board, and rendered judgment in favor of the defendant for costs. The power to correct errors and grievances in respect to the assessment of taxable property, is vested exclusively in the board of equalization, and the nature and character of the functions of this board show clearly that it acts

judicially.   Now the first inquiry is: Can the decisions
of this board be reviewed in the district court upon peti-
tion in error? Section five hundred and eighty of the
code provides that a "final order made by any tribunal,
board, or officer exercising judicial functions, and inferior
in jurisdiction to the district court, may be reversed,
vacated, or modified by the district court." *General
Statutes*, 628. But is the decision of the board, raising
the assessed valuation of the plaintiff's road to $12,000
per mile, a final order?   I think it is.   It fixes the
assessed valuation of the road per mile, and in determin-
ing the rate of taxation, in making the levy and in
collecting the tax, this order cannot be reviewed,
altered, or modified.   In all these proceedings this
decision is conclusive, and therefore, in respect to the
rights and interests of the plaintiffs, it is an absolute
determination of the subject-matter, so far as the func-
tions of the board are concerned.   Hence the conclusion
is irresistible, that the proceeding is a "final order."
And it being the final order of a board, inferior in juris-
diction to the district court, the petition in error is a
proper remedy, and is clearly allowed by the statute.

The next inquiry is in respect to the powers of the
board of equalization, and this substantially includes
all the errors assigned in the plaintiff's petition.

In the discussion of these powers, it will relieve the
case of much difficulty to first obtain a clear perception
of the rule of construction of statutes relating to munic-
ipal officers.

It was insisted on the argument that the law presumes
all officers have done their duty; this is true in some
respects, but when the acts of officers who exercise judi-
cial functions of limited jurisdiction are questioned, the
rule is well settled that they must not only show they
acted within the authority granted, but it must also appear
of record that they had jurisdiction.   *Frees v. Ford*, 6

*New York*, 176.    *Yates v. Lansing*, 9 *John.*, 437. *Reynolds v. Stansburg*, 20 *Ohio*, 353.    *Wheeler v. Raymond*, 8 *Cowen*, 314.    *Bloom v. Burdick*, 1 *Hill*, 130.

Again, the grant of powers to such officers must be strictly construed, because when acting under special authority they must act strictly on the conditions under which the authority is given. They can only exercise such powers as are especially granted, or as are incidentally necessary for the purpose of carrying into effect such powers; and when the law prescribes the mode which they must pursue, in the exercise of these powers, it excludes all other modes of procedure.    2 *Kent's Com.*, 298. *Treadwell v. Commissioners*, 11 *Ohio State*, 183.    *Commissioners v. Cox*, 6 *Ind.*, 403.    *Hoover v. Hoover*, 5 *Blackford*, 182.    *White v. Conover*, 5 *Id.*, 462.    *Murphy v. Napa. Co.*, 20 *Cal.*, 497.    *Church v. Hubbart*, 2 *Cranch*, 167.    *Bank of Augusta v. Earle*, 13 *Peters*, 587.    *Thomson v. Lee County*, 3 *Wallace*, 327.

The statute provides that the board of equalization shall hold a session of at least three days, at the county seat, commencing on the third Monday of April in each year, at which time persons feeling aggrieved by anything in the assessment roll, may apply to the board for correction of any supposed error in the listing or valuation of his property.    The time of meeting is definitely fixed by statute, and it seems clear that it was the intention of the law giver, that this time fixed by statute should operate as notice to all persons who might feel aggrieved.    Therefore, this provision of the statute cannot be regarded as directory merely, or simply as a matter of form, but as a matter of substance.

In the case at bar, the board, regardless of the time fixed by the statute, met on the 16th day of May, and then made their order re-assessing plaintiff's road. But it is said the board met under adjournment on the 18th day of April.    This fact will not help the case, as there is no

statutory provision authorizing an adjournment over several weeks. Such power is not delegated to the board; but suppose the statute should be so construed as to allow such adjournment, then the board might again adjourn for several weeks, and double the assessed valuation of some other person's property, and so on *ad infinitum*. Such construction would vest the board with absolute power to tax the property of the citizen as it might choose, and this too without notice. This cannot be the law; it is opposed to the letter and spirit of the statute; it would establish a precedent too dangerous to be tolerated, and the legislature never intended to grant to the board powers so dangerous and so liable to abuse. The board can exercise no such power.

But again, as already stated, the action of the board on the 16th day of May was had without notice to the plaintiffs. Will it be supposed that the board can indefinitely increase the assessed valuation of the property of the tax payer, at any time, without notice to him? Certainly it cannot; and however full and complete might be the jurisdiction of the board over the subject-matter, yet the party interested has, according to the plainest principles of justice, a clear right to a hearing and to a day in court, and any other view stands opposed to reason, justice, and sound policy, and to all those general principles which, in all cases, allow a party to be heard before his rights of property can be affected by any tribunal. This is the universal law of the land, and must be strictly complied with in the issuance and service of summons, in order to enable the court to render a valid judgment.

Surely then the doubling of the assessed valuation of a person's property does as vitally affect his rights and interests as the rendition of a judgment against him. Hence, it is clear that the board can have no jurisdiction, without notice to the person whose rights and interests

are to be affected by its decision. This is the only safe rule; any other might lead to great injustice.

The judgment of the district court must be reversed, and the proceedings and decisions of the county commissioners had on the 16th day of May, are hereby reversed, vacated, and set aside.

*Judgment in the appeal case* AFFIRMED. *Judgment in the case brought to district court by petition in error,* REVERSED, *and proceedings of county commissioners vacated and set aside.*